**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

KFC CORPORATION and

TACO BELL CORP.,

               Plaintiffs,

       v.

MMR SANDERS, LLC,  RMM L.L.C.,

and  RENEE D. SANDERS,

              Defendants.

Civil Action No.  `3:11cv-293-S`

**COMPLAINT**

Plaintiff KFC Corporation ("KFCC") and Taco Bell Corp. ("Taco Bell"), for their

complaint against RMM, L.L.C., MMR Sanders, LLC and Renee D. Sanders, collectively the

"Defendants," state as follows:

**THE PARTIES**

1.     Plaintiff KFCC[1] is a corporation organized under the laws of the State of

Delaware, with its principal place of business in Louisville, Kentucky.

2.     Plaintiff Taco Bell is a corporation organized and existing under the laws of the

State of California, with its principal place of business in Irvine, California.

3.     Defendant RMM, L.L.C. ("RMM"), upon information and belief, is a limited

liability company organized under the laws of Georgia with its principal place of business in

Georgia, which may be served through its registered agent John B. Sivertsen, 8215 Roswell Rd.,

Bldg. 800, Atlanta, Georgia 30350.

---

[1] References to KFCC relate to the corporate entity and to legal issues.  Hereinafter, there are also references to
"KFC," in those instances, they are brand-related references.

4.      Defendant MMR Sanders, LLC ("MMR"), upon information and belief, is a limited liability company organized under the laws of Georgia with its principal place of business in Georgia, which may be served through its registered agent John B. Sivertsen, 8215 Roswell Rd., Bldg. 800, Atlanta, Georgia 30350.

5.      Defendant Renee D. Sanders, upon information and belief, is an individual citizen residing in Stone Mountain, Georgia, and is a member, owner and/or officer of RMM, L.L.C. and MMR Sanders, LLC.

## JURISDICTION

6.      This court has original jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) over the claims asserted under the Lanham Act, 15 U.S.C. § 1051 et seq.  This court also has original jurisdiction over the claim of unfair competition alleged herein pursuant to 28 U.S.C. § 1338(b).  This court also has supplemental jurisdiction over all related claims alleged herein pursuant to 28 U.S.C. § 1367(a).

7.      Personal jurisdiction over all Defendants is proper under Kentucky's long-arm statute (KRS § 454.210), because this action arises out of and involves: (a) the enforcement of KFC contracts negotiated and executed in Kentucky and governed by Kentucky law, with payments and the guaranty of payments under such contracts to be made to KFCC in Kentucky, the breach of which causes injury to KFCC in Kentucky; and (b) injury arising out of tortious conduct directed to KFCC in Kentucky.

## FACTS

### KFCC'S Business

8.      For decades, KFCC has operated and licensed others to operate restaurants under the "Kentucky Fried Chicken" and "KFC" names, pursuant to a valid franchise agreement and its franchise system.

9.     Through the expenditure of significant time, skill, effort and money, KFCC has developed and is the sole and exclusive user of a distinctive food service system (the "KFC System") under which food is sold to the public from KFC restaurants.  The KFC System includes, among other things, the following elements:

(a)     Distinctive and characteristic trademarks and service marks, including without limitation, "Kentucky Fried Chicken," "KFC," "It's Finger Lickin' Good," Colonel Sanders, and other related trademarks, service marks, trade names, copyrights, and all ancillary signs, symbols, or other indicia used in connection or conjunction with said marks, whether or not registered with the United States Patent and Trademark Office (the "KFC Marks");

(b)     A public image that each KFC restaurant is a unit in an established restaurant system and that all are operated with uniform standards of service and product quality and portions; and

(c)     Methods and procedures for the preparation and serving of food and beverage products;

(d)     Special ingredients, confidential recipes for food products and distinctive service accessories;

(e)     Methods of achieving quality control and procedures designed to be advantageous to KFC restaurant operators and consumers;

(f)     Plans and specifications for distinctive premises, featuring characteristic interior and exterior style; design, décor, furnishings, equipment layout and interior and exterior signage;

(g)     A uniform method of operating which is described in the "KFC Confidential Manual of Operations" and in other communications to franchisees (all such other

communications and any supplements or additions thereto being hereinafter collectively referred to as the "KFC Confidential Manual");

(h)     Such exclusive copyrights and trade secrets as have been and may from time to time be developed, which are owned by KFCC and which are disclosed to its franchisees in confidence in connection with the construction and operation of KFC restaurants.

10.     The KFC Marks have been used exclusively by KFCC and its designated licensees in connection with the operation of KFC restaurants.  There are more than 11,000 KFC outlets in more than 80 countries and territories around the world, serving some 8 million customers each day.

11.     The following principal Kentucky Fried Chicken/ KFC trademarks, service marks, and commercial symbols, among others, have been registered by KFCC on the Principal Register of the United States Patent and Trademark Offices:

| | |
|---|---|
| KENTUCKY FRIED CHICKEN | Registration Nos. 815,167 (September 13, 1966) and 838,895 (November 14, 1967) |
| KFC | Registration Nos. 979,050 (February 19, 1974) and 1,209,310 (September 14, 1982) |
| IT'S FINGER LICKIN' GOOD | Registration Nos. 3,348,337 (December 4, 2007) and 3,035,298 (December 27, 2005) |
| COLONEL SANDERS | Registration Nos. 806,104 (March 22, 1966) and 810,835 (July 5, 1966) |
| 2006 COLONEL SANDERS | Registration No. 3,446,928 (June 10, 2008) |

ORIGINAL RECIPE                     Registration No. 1,303,969 (November 6, 1984)

KENTUCKY GRILLED             Registration No. 3,694,656 (October 13, CHICKEN                                  2009)

12.    Additional registered KFC Marks are listed in Exhibit A.

13.    The foregoing registrations are in full force and effect and cover the goods and services identified on the registration certificates.  These registrations are valid, subsisting, and incontestable under the Lanham Act, 15 U.S.C. § 1065.

14.    Since its first use, the name "Kentucky Fried Chicken" and the name "KFC" have become universally associated with KFCC's unique and particular plan of food service operation.  As a result, KFCC owns common law trade name rights and rights in the names "Kentucky Fried Chicken" and "KFC" and the other KFC Marks.

15.    By virtue of the long use and promotion and resulting fine public reputation of the trade names "Kentucky Fried Chicken" and "KFC," there is secondary meaning in the names "Kentucky Fried Chicken" and "KFC" and the KFC Marks in that the public associates the products sold in connection with the KFC Marks as originating from a single source.

16.    KFCC has developed, advertised, and promoted its trademarks and service marks at great expense so that the KFC Marks have become valuable assets of substantial and inestimable worth to KFCC.  The KFC Marks are symbols of quality foods served by KFCC's chain of restaurants around the world.

17.    KFCC has a vital economic interest in protecting its name and the KFC Marks. The preservation and protection of its name and the KFC Marks are essential to the maintenance of the quality of KFC restaurants and the goodwill and reputation associated with them.

**<u>Taco Bell's Business</u>**

18.     Founded in 1962, Taco Bell has grown into the leading Mexican style quick service restaurant company in the United States.  Taco Bell and its licensees and franchisees operate thousands of restaurants in the United States and internationally.

19.     Beginning in 1962, in connection with its business, Taco Bell has created, owned and continuously used more than eighty (80) federally registered trademarks and service marks, many of which are currently valid and subsisting.  The following principal Taco Bell trademarks, service, marks, and commercial symbols, among others, (collectively, "Taco Bell Marks") have been registered by Taco Bell on the Principal Register of the United States Patent and Trademark Office:

| | |
|---|---|
| TACO BELL | Registration No. 820,073 (December 6, 1966) |
| POLE SIGN DESIGN NO. 1 | Registration No. 846,432 (March 19, 1968) |
| MEXIMELT | Registration Nos. 1,528,496 (March 7, 1989), 1691822 (June 9, 1992), 1,615,940 (October 2, 1990) |
| BIG BELL VALUE MENU | Registration No. 2,967,199 (July 12, 2005) |
| DOUBLE DECKER | Registration No. 2,860,026 (July 6, 2004) |
| BORDER BOWL | Registration No. 2,714,663 (May 6, 2003) |

THINK OUTSIDE THE BUN            Registration No. 3,020,149
                                (November 29, 2005)


RUN FOR THE BORDER              Registration No. 1,781,957 (July 13,
                                1993)


CRUNCHWRAP                      Registration No. 3,108,135 (June
                                20, 2006)


20.     Additional registered Taco Bell Marks are listed in Exhibit B.

21.     The foregoing registrations are in full force and effect and cover the goods and

services identified on the registration certificates.  These registrations are valid, subsisting, and

incontestable under the Lanham Act, 15 U.S.C. § 1065.

22.     Taco Bell has spent considerable time and effort and has committed millions of

dollars in financial resources toward developing an identity for quality and excellence in its

restaurants.  Taco Bell has earned a well-deserved reputation for high quality among branded

quick service restaurants.

23.     This widespread public acceptance of Taco Bell's food and services arises from

Taco Bell's: (a) uniform, high standards for the preparation, presentation, and service of Taco

Bell food; (b) a consistent overall image and appearance inside and outside the restaurant; (c)

uniform methods of operation; and (d) Taco Bell's valuable Trademarks, including the name

"Taco Bell," and distinctive names for its food items.

24.     As a result of the widespread use and display of the Taco Bell Marks, its

commitment to associate the Taco Bell brand with quality, and enforcement of strict standards of

conduct by its licensees and franchisees, including bringing legal action against infringers of its

Trademarks, the Taco Bell Marks have built up secondary meaning and extensive goodwill. Taco Bell has a vital economic interest in protecting its name and the Taco Bell Marks.  The preservation and protection of its name and the Taco Bell Marks are essential to the maintenance of the quality of Taco Bell restaurants and the goodwill and reputation associated with them.

25.     The Taco Bell System includes trade secret Processes and Techniques that encompass equipment specifications, recipes, methods of food presentation and service, business techniques, operating guidelines, know-how, and technology.

26.     Taco Bell has expended significant time and resources in developing the Taco Bell System and it is a fundamental component of Taco Bell's business.  The Taco Bell System is a valuable business asset and offers competitive advantages.  Without the expenditure of significant time and resources, third parties would not be able to develop the trade secret Processes and Techniques of the Taco Bell System.

27.     The trade secrets within the Taco Bell System are not lawfully known to persons outside of Taco Bell and its licensees and franchisees.  Taco Bell has undertaken and continues to undertake considerable efforts to maintain the secrecy of the trade secret Processes and Techniques.

**Franchise Agreements**

28.     **C830001**-KFCC issued a Kentucky Fried Chicken Franchise Agreement dated August 28, 1997 ("Fulwood Franchise Agreement"), and an Early Renewal Kentucky Fried Chicken Franchise Agreement, dated August 29, 1997 ("Early Renewal Agreement"), to RMM, for the operation of a KFC restaurant, identified as C830001 and located at 441 Fulwood Boulevard, Tifton, Georgia.  A true and correct copy of the Fulwood Franchise Agreement is

attached as Exhibit C, and a true and correct copy of the Early Renewal Agreement is attached as Exhibit D.

29.     **C830008**- KFCC also issued a Kentucky Fried Chicken Franchise Agreement dated August 28, 1997, and an Early Renewal Kentucky Fried Chicken Franchise Agreement, dated August 29, 1997, to RMM, for the operation of a KFC restaurant, identified as C830008 and located at 2337 North Columbia Street, Milledgeville, Georgia.

30.     **C830016**- KFCC also issued a Kentucky Fried Chicken Franchise Agreement, dated September 26, 2000, to MMR, for the operation of a KFC restaurant, identified as C830016 and located at 2747 Evans Mill Road, Lithonia, Georgia, which upon information and belief permanently closed on October 31, 2010.

31.     By document dated September 27, 2000, MMR executed an agreement titled "First Amendment to Franchise Agreement [Co-Brand Provisions]", which granted it to the right to operate the C830016 restaurant as a co-branded KFC/Taco Bell Unit restaurant. A true and correct copy of the KFC/Taco Bell Co-Brand Addendum for the C830016 restaurant is attached as Exhibit E.

32.     Taco Bell issued a Taco Bell Franchise Agreement, dated September 26, 2000, to Milton D. Sanders, Renee Sanders, Marcus D. Sanders and Michael D. Sanders, for the operation of a Taco Bell restaurant, identified as Unit No. 18502 and located at the C830016 Evans Mill Road co-branded store, which upon information and belief permanently closed on October 31, 2010. ("Taco Bell Franchise Agreement."). A true and correct copy of the Taco Bell Franchise Agreement is attached as Exhibit F.

33.    **C830017**- KFCC also issued a Kentucky Fried Chicken Franchise Agreement, dated June 6, 2002, to RMM, for the operation of a KFC restaurant, identified as C830017 and located at 2960 Stonecrest Pass, Lithonia, Georgia.

34.    By document dated August 27, 2003, RMM executed an agreement titled "Pizza Hut '2N1' Amendment to Franchise Agreement [Co-Brand Provisions]", which granted it the right to operate the C830017 restaurant as a co-branded KFC/Pizza Hut restaurant.

35.    The Kentucky Fried Chicken Franchise Agreements for the C830008, C830016 and C830017 restaurants are identical in all pertinent respects to the Fulwood Franchise Agreement attached as Exhibit C and collectively will be referred to as the "KFC Franchise Agreements."   The identified C830001, C830008, C830016, C830017 restaurants collectively will be referred to as the "Restaurants."   The identified C830016 co-branded restaurant may be referred to separately as the "KFC/Taco Bell Co-Brand Restaurant."   RMM and MMR collectively will be referred to as "Franchisees."

### Assignment and Guaranty of Taco Bell Franchise Agreement to Franchisee

36.    By document entitled "Assignment" dated October 27, 2000, Milton D. Sanders, Renee Sanders and Judith Sanders (signing on behalf of minors Marcus D. Sanders and Michael D. Sanders) assigned all their right, title and interest in the Taco Bell Franchise Agreement to defendant MMR.

37.    Pursuant to the terms of the guaranty included therewith, Renee Sanders (along with other individuals) agreed to personally guarantee the performance, payment and discharge of all of MMR's indebtedness and obligations to Taco Bell.  The identified Assignment will be referred to as the "Taco Bell Assignment and Guaranty."  A true and correct copy of the Taco Bell Assignment and Guaranty is attached as Exhibit G.

## Franchisee Contract Obligations and other Franchisee Contracts

38.     Pursuant to the terms and limitations of the KFC Franchise Agreements, KFCC granted to the Franchisees a license to use KFCC's trademarks, service marks, and nationally recognized methods of preparation and service of KFC brand chicken and other food products at the Restaurants.  KFC Franchise Agreements, paragraph 3.1, Exhibit C.

39.     Pursuant to paragraph 8.1 of the KFC Franchise Agreements, the Franchisees were obligated to submit monthly sales reports and pay royalties to KFCC on a monthly basis in consideration for the License granted by KFCC.  KFC Franchise Agreements, paragraph 8.1, Exhibit C.

40.     Pursuant to paragraph 10.2 of the KFC Franchise Agreements, the Franchisees also executed an advertising agreement with the KFC National Council and Advertising Cooperative Inc. (the "National Co-Op."), dated August 29, 1997 for the C830001 and C830008 restaurants (the "1997 Advertising Agreement"), dated September 27, 2000 for the C830016 restaurant, and dated June 7, 2002 for the C830017 restaurant.  A true and correct copy of the 1997 Advertising Agreement is attached as Exhibit H.  The Advertising Agreements for the C830001, C830008, C830016 and C830017 restaurants are identical in all pertinent respects to the 1997 Advertising Agreement attached as Exhibit H.  The Advertising Agreements for all the C830001, C830008, C830016 and C830017 restaurants collectively will be referred to as the "KFC Advertising Agreements."

41.     Pursuant to the KFC Advertising and Franchise Agreements, the Franchisees were obligated to make monthly advertising fee payments to the National Co-Op.  KFC Advertising Agreements, paragraph 2(a), Exhibit H; KCF Franchise Agreements paragraph 10.1, Exhibit C.

42.     By execution of a document entitled "Control Person Addendum," dated August 29, 1997 for the C830001 and C830008 restaurants (the "1997 Control Person Addendum"), dated September 27, 2000 for the C830016 restaurant, and dated June 7, 2002 for the C830017 restaurant, the Franchisees designated Milton D. Sanders as its authorized agent for all transactions with KFCC and the person responsible for the control and operation of the Restaurants.  A true and correct copy of the 1997 Control Person Addendum is attached as Exhibit I.  The Control Person Addendums for the C830001, C830008, C830016 and C830017 restaurants are identical in all pertinent respects to the 1997 Control Person Addendum attached as Exhibit I.  The Control Person Addendums for all the C830001, C830008, C830016 and C830017 restaurants collectively will be referred to as the "Control Person Addendums."

43.     Pursuant to the terms and limitations of the Taco Bell Franchise Agreement, Taco Bell granted to MMR a limited license to use Taco Bell's trademarks in connection with the sale of the food, beverage and other products expressly approved by Taco Bell.  Taco Bell Franchise Agreement, paragraphs 1.0 and 3.5, Exhibit F.

44.     Pursuant to paragraphs 7(b) and 7(c) of the Taco Bell Franchise Agreement, MMR was obligated to pay Taco Bell a franchise fee and marketing fee in consideration for the License granted by Taco Bell.  Taco Bell Franchise Agreement, paragraphs 7(b)-(c), Exhibit F.

### Guaranty Agreements and Obligations

45.     Defendants Renee D. Sanders (the "Guarantor"), along with other individuals who have since filed for bankruptcy, signed guaranty agreements for the KFC restaurants, by documents dated August 29, 1997, September 27, 2000 and June 7, 2002.  True and correct copies of the KFC guaranty agreements for the Restaurants are attached as Exhibit J.

46.    As part of the Taco Bell Assignment and Guaranty, the Guarantor also signed a guaranty agreement for the Taco Bell restaurant, by document dated October 9, 2000.  A true and correct copy of the guaranty agreement for the Taco Bell restaurant is attached as Exhibit G.

47.    The guaranty agreements for all the Restaurants will collectively be referred to as the "Guaranty Agreements."

48.    Pursuant to the terms of the Guaranty Agreements, the Guarantor agreed to personally guarantee the performance, payment, and discharge of all of the Franchisees' indebtedness and obligations to KFCC, the National Co-Op and Taco Bell.

### Defaults and Termination of the Franchise Agreements

49.    By letters dated May 18, 2009, August 20, 2009 and September 10, 2009 KFCC notified the Franchisees that they were in default under the KFC Franchise Agreements because they failed to remit to the National Co-Op the advertising fees pertaining to the Restaurants for the months February, April, May and June 2009 ("NCAC Default Letters").

50.    By letters dated July 20, 2009, August 19, 2009, and September 25, 2009 KFCC also notified the Franchisees, through their designated control person, that they were in default under the KFC Franchise Agreements because they failed to remit to KFCC the required monthly sales reports and payments pertaining to the Restaurants for the months May through July 2009 (the "Royalty Default Letters").   The NCAC Default Letters and the Royalty Default Letters will collectively be referred to as the "Default Letters." True and correct copies of the Default Letters are attached as Exhibit K.

51.    KFCC also notified the Franchisees through the Default Letters of its intent to terminate the KFC Franchise Agreements by stating that unless the defaults of the Franchisees' obligations to KFCC and the National Co-Op for the required royalties and advertising fees were

cured within thirty (30) days, the KFC Franchise Agreements would terminate, effective the first day following the thirty (30) day cure period.

52.     Despite the notices of defaults and demands for payment, the Defendants (as Franchisee and Guarantor) failed to cure the defaults in the manner and in the time period set out in the Default Letters.

53.     By letter dated October 7, 2009, KFCC notified the Franchisees that the KFC Franchise Agreements for the Restaurants were terminated, effective immediately ("Termination Letter").  A true and correct copy of the Termination Letter is attached as Exhibit L.

54.     Pursuant to the KFC/Taco Bell Co-Brand Addendum, termination of the KFC Franchise Agreement "for any reason" constitutes a cross-default of the Taco Bell Franchise Agreement. KFC/Taco Bell Co-Brand Addendum, paragraph 1, Exhibit E.

55.     Pursuant to the KFC/Taco Bell Co-Brand Addendum, the default and termination of the C830016 KFC Franchise Agreement, in conjunction with Taco Bell cross-default provision, resulted in default and termination of the C830016 Taco Bell Franchise Agreement, effective October 7, 2009.  KFC/Taco Bell Co-Brand Addendum, paragraph 1, Exhibit E; Termination Letter, Exhibit L.

56.     Additionally, by letter dated April 28, 2011, Taco Bell also notified the Taco Bell Franchisee that the Taco Bell Franchise Agreement was terminated, effectively immediately.  A true and correct copy of the Taco Bell Termination Letter is attached as Exhibit O.

**Post Termination**

57.     Upon termination of the KFC and Taco Bell Franchise Agreements and pursuant to their terms, the Franchisees, the Control Person, and the Guarantor were required to take the following actions at the Franchisees' sole cost and expense ("Post-Termination Obligations"), including but not limited to:

- 14 -

(a)    Immediately cease doing business as KFC restaurants and discontinue the use of KFC's Marks, and the KFC System;

(b)    Return to KFCC the KFC Confidential Manual and all trade secret and confidential materials; and

(c)    To promptly de-image the Restaurants (renovate or refurbish) from their present appearance as KFC Restaurants, sufficiently to eliminate any possibility of confusion in the mind of the public that the Restaurants are in any manner connected with KFCC.

(d)    Immediately discontinue use of the Taco Bell System and Taco Bell Marks;

(e)    To promptly remove the Taco Bell Marks from all buildings, signs, fixtures and furnishings, and alter and paint all buildings and other improvements to a design and color basically different from authorized Taco Bell building designs and painting schemes; and

(f)    Cease operation under any name or in any manner that might tend to give the public the impression that the Franchisee is or was affiliated with Taco Bell.

KFC Franchise Agreements, paragraph 3.4, Exhibit C; Taco Bell Franchise Agreement, paragraph 15.1, Exhibit F.

58.    In the Termination Letters, KFCC further confirmed and reemphasized these contractual Post-Termination Obligations, and demanded that the Franchisees immediately take all such actions with respect to the Restaurants.  KFC Termination Letter, Exhibit L; Taco Bell Franchise Agreement, Exhibit O.

- 15 -

59.     Despite the termination of the KFC Franchise Agreements on October 7, 2009 and resulting cross-default and termination of the Taco Bell Franchise Agreement, the Defendants (as Franchisee and Guarantor) failed, among other obligations, to immediately cease doing business as KFC and Taco Bell restaurants and to otherwise comply with their Post-Termination Obligations.

60.     Due to the Defendants' continued unauthorized operation of the Restaurants, KFCC further demanded that the Defendants cease and desist operation of the Restaurants and comply with all Post-Termination Obligations, by letter dated March 26, 2010 ("Demand Letter").  A true and correct copy of the Demand Letter is attached as Exhibit M.

61.     The KFC Franchise Agreements also provide that, upon termination, the Franchisees will not operate any similar business within a ten (10) mile radius of the Restaurants for a continuous, uninterrupted period of twelve (12) months.  KFC Franchise Agreements, paragraph 15.1, Exhibit C.

62.     The Taco Bell Franchise Agreement also provides that, upon termination, MMR will not operate any similar business within a ten (10) mile radius of the Restaurant for a period of one year following the termination. Taco Bell Franchise Agreement, paragraph 3.8, Exhibit F.

<u>**COUNT I**</u>

**(Declaratory Judgment)**

63.     The KFC Franchise Agreements were terminated, effective October 7, 2009, pursuant to paragraph 17.3 of the KFC Franchise Agreements and the terms of the Default and Termination Letters, which further resulted in cross-default and termination of the Taco Bell Franchise Agreement.

64.     Despite the termination of the KFC Franchise Agreements and Taco Bell Franchise Agreement and the contractual Post-Termination Obligations, the Defendants (as the

Franchisees and Guarantor) continued to operate the Restaurants as KFC Restaurants and KFC/Taco Bell Co-Brand Restaurant, and to use and display, without license, KFCC and Taco Bell's trademarks and service marks. Upon information and belief, the KFC/Taco Bell Co-Brand Restaurant permanently closed October 31, 2010. The Franchisee continues to hold itself out as a KFC franchisee at the remaining Restaurants.

65.    This action involves an actual controversy between the parties, within the scope and meaning of 28 U.S.C. §§ 2201-2202.

66.    Pursuant to the federal Declaratory Judgment Act (28 U.S.C. § 2201 et seq.), KFCC and Taco Bell are entitled to a declaratory judgment that the Franchise Agreements between KFCC, Taco Bell and the Franchisees terminated effective October 7, 2009, due to the Franchisees' failure to cure the notices of default according to the terms set forth in the Default and Termination Letters, and terms of the KFC and Taco Bell Franchise Agreements.

67.    KFCC and Taco Bell are also entitled to a declaratory judgment by this court, pursuant to 28 U.S.C. § 2201, that the Defendants: (a) are not authorized to use KFC or Taco Bell's Marks, (b) are not authorized to operate the Restaurants as KFC Restaurants or as a KFC/Taco Bell Co-Brand Restaurant, (c) are not authorized to hold themselves out as a KFC or Taco Bell Franchisee, and (d) are required to comply with the terms of the KFC Franchise Agreements and Taco Bell Franchise Agreement by paying the required fees thereunder.

## COUNT II

**(Breach of Contract – KFC Franchise and Advertising Agreements, Taco Bell Franchise Agreement)**
**(Damages and Injunctive Relief)**

68.     Pursuant to the KFC Franchise Agreements, the Franchisees were obligated to submit sales reports and pay royalties to KFCC on a monthly basis in consideration for the License granted by KFCC and to pay monthly advertising fees to the National Co-Op.  KFC Franchise Agreements, paragraphs 8.1, 10.1, Exhibit C; KFC Advertising Agreements, paragraph 2(a), Exhibit H.

69.     The Franchisees have failed to submit the monthly sales reports and pay all the royalties required by the terms of the KFC Franchise Agreements that are due to KFCC since May 2009.  KFC Franchise Agreements, paragraph 8.1, Exhibit C.

70.     Further, the Franchisees have failed to pay the advertising fees required by the KFC Franchise and Advertising Agreements that are due to the National Co-Op since February 2009.  KFC Advertising Agreements, paragraph 2(a), Exhibit H; KFC Franchise Agreements paragraph 10.1, Exhibit C.

71.     The Franchisees' obligations to the National Co-Op were for the benefit of KFCC and may be enforced by KFCC.  KFC Franchise Agreements, paragraph 10.5, Exhibit C.

72.     The Franchisees' failure to pay the royalties and advertising fees when due constitute a material breach of the KFC Franchise Agreements.  KFC Franchise Agreements, paragraph 8.3, Exhibit C.

73.     KFCC is also entitled to recover a late payment charge at the rate of 1 1/2% of all royalties for each month or partial month cumulative during which they are due and unpaid. KFC Franchise Agreements, paragraph 8.3, Exhibit C.

74.    KFCC is also entitled to recover a finance charge at the rate of 10% per annum for all advertising fees not paid within sixty (60) days of their due date.  KFC Advertising Agreement, paragraph 2(b), Exhibit H.

75.    Pursuant to the Taco Bell Franchise Agreement, MMR was obligated to pay Taco Bell a franchise fee and marketing fee in consideration for the License granted by Taco Bell. Taco Bell Franchise Agreement, paragraph 7(b)-(c), Exhibit F.

76.    The Franchisees received notice of their defaults pursuant to the terms of the KFC Franchise Agreements and default letters, with an opportunity to cure the noticed defaults. Default Letters, Exhibit K.

77.    The Franchisees failed to cure the noticed defaults in the manner and in the time period set out in the Default Letters.

78.    The KFC Franchise Agreements terminated pursuant to their terms on October 7, 2009.  Termination Letter, Exhibit L.

79.    The Taco Bell Franchise Agreement terminated pursuant to the cross-default provision of the KFC/Taco Bell Co-Brand Addendum on October 7, 2009.  KFC/Taco Bell Co-Brand Addendum, paragraph 1, Exhibit E.  The Taco Bell Franchise Agreement terminated pursuant to the termination letter dated April 28, 2011.  Taco Bell Termination Letter, Exhibit O.

80.    Since the KFC Franchise Agreements and Taco Bell Franchise Agreement were terminated, the Franchisees have failed to comply with their contractual Post-Termination Obligations.

81.    Without license or permission from KFCC or Taco Bell and despite the termination of the KFC and Taco Bell Franchise Agreements and the contractual Post-Termination Obligations, the Defendants (as the Franchisees and Guarantor) continue to operate

the Restaurants as KFC Restaurants, and to use and display, without license, KFC and Taco

Bell's Marks.  Upon information and belief, the KFC/Taco Bell Co-Brand Restaurant

permanently closed October 31, 2010, but has not been de-imaged.

82.    The Defendants continue to hold themselves out as a KFC franchisee, using

KFC's Marks without a license or other right to do so and without any payment for such license.

83.    Further, the Franchisees entered into Lease Agreements with NFA Equipment

Fund II, LP and National Franchise Acceptance, LLC, its servicer and agent ("NFA"), for grilled

ovens for the Restaurants.

84.    KFC has become liable to NFA due to the Defendants' breach of their obligations

under the terms of the grilled oven lease agreements.

85.    By assignment dated February 10, 2011, NFA required consideration from KFCC

in the amount of $24,120.07 (the "NFA Assignment").  A true and correct copy of the NFA

Assignment is attached as Exhibit N.

86.    Consequently, the Defendants have breached their obligations under the KFC

Franchise and Advertising Agreements, Taco Bell Franchise Agreement, and other agreements

with KFCC, the National Co-Op, and NFA.

87.    KFCC has performed all of its obligations under the KFC Franchise and

Advertising Agreements.

88.    Taco Bell has performed all of its obligations under the Taco Bell Franchise

Agreement.

89.    KFCC and Taco Bell have no adequate remedy at law for the Defendants'

breaches of the KFC Franchise Agreements and Taco Bell Franchise Agreement by their

continued operation of the Restaurants as KFC Restaurants and KFC/Taco Bell Co-Brand

Restaurant, and their continued unauthorized display and use of KFC and Taco Bell's Marks, and distinctive architectural designs in connection with the Restaurants. Therefore, KFCC and Taco Bell are entitled to injunctive relief commanding specific performance of the Post-Termination Obligations required by the KFC Franchise Agreements and Taco Bell Franchise Agreement.

90.     In addition to injunctive relief and judgment for past due payments entered in their favor, KFCC and Taco Bell are entitled to recover reasonable attorneys' fees, court costs and its expenses in connection with this action. KFC Franchise Agreements, paragraph 20.3, Exhibit C; Taco Bell Franchise Agreement, paragraph 15.2, Exhibit F.

<u>**COUNT III**</u>

**(Breach of Contract – Guaranty Agreements)**

91.     The Guarantor, defendant Renee D. Sanders, signed the Guaranty Agreements for the Restaurants agreeing to guarantee the performance, payment, and discharge of all of the Franchisees' indebtedness and obligations to KFCC, to the National Co-Op under the KFC Franchise and Advertising Agreements, and to Taco Bell under the Taco Bell Franchise Agreement, Taco Bell Assignment, the oven Lease Agreements, and other contractual obligations. Guaranty Agreements, Exhibit J.

92.     Despite notice of the Franchisees' defaults of various contracts, the termination of the KFC and Taco Bell Franchise Agreements, and the Franchisees' failure to perform their Post-Termination Obligations, the Guarantor has failed to perform the Franchisees' obligations as required by the terms of the Guaranty Agreements which, upon termination, requires among other obligations, the Franchisees to cease operating the Restaurants and to completely de-image the Restaurants so that they no longer use and display KFC and Taco Bell's Marks and appear "confusingly similar" to authorized KFC and Taco Bell restaurants.

93.     Because the Franchisees have failed to perform their obligations to KFCC and Taco Bell arising out of the Franchise and other Agreements, the Guarantor is liable for: (a) complying with the Franchisees' Post-Termination Obligations, and the other injunctive relief to which KFCC and Taco Bell are entitled; (b) all damages awarded KFCC and Taco Bell for breach of contract, trademark infringement and unfair competition; and (c) KFCC and Taco Bell's reasonable attorneys' fees, court costs, interest, and expenses in connection with this action.

94.     KFCC and Taco Bell are entitled to judgment against the Guarantor for all damages awarded against the Franchisees and injunctive relief commanding specific performance of the Post-Termination Obligations required by the Franchise Agreements.

## COUNT IV

### (Trademark Infringement)

95.     KFCC and Taco Bell are the owners of various trademarks and service marks, (collectively, the "KFC and Taco Bell Marks"), which are registered in the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. §§ 1051 and 1053). Several of the KFC and Taco Bell Marks are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. See partial list of KFC's Marks, Exhibit A, and partial list of Taco Bell's Marks, Exhibit B.

96.     KFCC and Taco Bell have given notice to the public of their registration of the KFC and Taco Bell Marks as provided in the Lanham Act, 15 U.S.C § 1111.

97.     KFCC and Taco Bell have developed their trademarks and service marks at great expense so that today they are valuable and irreplaceable assets. Additionally, KFCC and Taco Bell have invested substantial sums in advertising and promoting their goods and services under the KFC and Taco Bell Marks in connection with the marketing and sale of their services

and related goods by, among other things, prominently displaying the KFC and Taco Bell Marks on their Restaurants, signs, menus, containers and displays associated therewith.

98.     As a result, the KFC and Taco Bell Marks are distinctive and have become favorably known in the minds of the purchasing public generally throughout the United States and various foreign countries as signifying KFCC and Taco Bell as the source of high quality, reliable restaurant services and related goods.  The KFC and Taco Bell Marks are valuable and irreplaceable assets.

99.     KFCC and Taco Bell police the use of their trademarks and service marks at great expense and effort, and demand high quality and compliance with their standards to protect the value of the KFC and Taco Bell Marks.

100.     The Defendants, solely by reason of the License from KFCC and Taco Bell, had authority to use the KFC and Taco Bell Marks in accordance with the terms and conditions of the KFC and Taco Bell Franchise Agreements, pursuant to paragraph 3.1 of the KFC Franchise Agreements, Exhibit C and sections 1.0 and 14 of the Taco Bell Franchise Agreement, Exhibit F.

101.     Upon termination of the KFC Franchise Agreements and Taco Bell Franchise Agreement, the Franchisees' License and authority to use the KFC and Taco Bell Marks was revoked, and all rights to such Marks reverted to KFCC and Taco Bell, at which time the Franchisees were required to immediately discontinue use of all KFCC and Taco Bell trademarks, service marks, trade names, trade secrets, and processes owned or developed by KFCC and Taco Bell.  See KFC Franchise Agreements, paragraph 3.4, Exhibit C; Taco Bell Franchise Agreement, section 15.1, Exhibit F.

102.     Despite the termination of the KFC and Taco Bell Franchise Agreements, and despite demand by KFCC, the Defendants (as Franchisee and Guarantor) failed to cease doing business as a KFC Restaurant and to cease and discontinue their use and display of the KFC and Taco Bell Marks.  Upon information and belief the KFC/Taco Bell Co-Brand Restaurant permanently closed October 31, 2010.  The Franchisees continue to portray the remaining Restaurants as KFC Restaurants and to use, without a License or other right, the KFC Marks. The Franchisees continues to hold themselves out as KFC Franchisees.

103.     The Franchisees' continued use in interstate commerce of the KFC and Taco Bell Marks is an infringement of KFCC and Taco Bell's rights in those marks in violation of 15 U.S.C. § 1114(1) and infringes upon KFCC and Taco Bell's goodwill, reputation, trademarks, and service marks; creates a likelihood of injury to KFCC and Taco Bell's business reputation; causes substantial likelihood of confusion as to the relationship, if any, between KFCC, Taco Bell and the Franchisee; creates the appearance that the Franchisees are still a duly licensed franchisees of KFCC and Taco Bell; and otherwise competes unfairly with KFCC and Taco Bell.

104.     The Franchisees' acts of infringement of the KFC and Taco Bell Marks entitle KFCC and Taco Bell to recover such monetary relief to which it is entitled pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees, jointly and severally against the Franchisees and the Guarantor.

105.     The Franchisees' acts of infringement of the KFC and Taco Bell Marks also has caused irreparable injury to KFCC and Taco Bell and will continue to cause irreparable harm to KFCC if not restrained by this court from further violation of KFCC and Taco Bell's rights. KFCC and Taco Bell have no adequate remedy at law, and therefore seek injunctive relief under 15 U.S.C. § 1116.

## COUNT V

### (Federal Unfair Competition)

106.　　The Franchisees, after the termination of their License to use the KFC and Taco Bell Marks in the operation of the KFC Restaurants and the KFC/Taco Bell Co-Brand Restaurant under the KFC and Taco Bell Franchise Agreements, and with the intent and purpose of misleading the trade and the public, continued to operate the Restaurants as KFC Restaurants and and to use KFCC and Taco Bell's trademarks and service marks.

107.　　The Franchisees' unlicensed use of the KFC and Taco Bell's Marks comprises a false designation of origin or false representation, and constitutes the utilization of false descriptions and representations in interstate commerce. The Defendants falsely represented themselves to the public as a KFCC and Taco Bell licensee, and continue to falsely represent themselves to the public as a KFCC licensee.

108.　　The Franchisees' acts are in violation of 15 U.S.C. § 1125(a).

109.　　The Franchisees' acts have caused irreparable injury to KFCC and Taco Bell and will continue to cause irreparable injury to KFCC if not restrained by this court from violations of KFCC's rights. KFCC and Taco Bell have no adequate remedy at law, and therefore seek injunctive relief under 15 U.S.C. § 1116 and such monetary relief to which they are entitled pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees.


WHEREFORE, KFCC and Taco Bell demand judgment against Defendants, and pray for the following relief:

(1)　　A Declaratory Judgment that the KFC and Taco Bell Franchise Agreement terminated, effective October 7, 2009;

(2)     Specific enforcement of the Franchisees' Post-Termination Obligations under the KFC and Taco Bell Franchise Agreements;

(3)     Judgment in favor of KFCC and Taco Bell on their claims for payment due and owing under the NFA agreements and assignment, the KFC Franchise Agreement, KFC Advertising Agreements, and Taco Bell Franchise Agreement during the operation of the Restaurants as KFC restaurants and a KFC/Taco Bell Co-Brand Restaurant, against the Defendants jointly and severally, plus late fees, interest charges, and finance charges, plus such amounts as accrue until judgment;

(4)     Judgment in favor of KFCC and Taco Bell against the Defendants jointly and severally, for damages resulting from the Defendants' acts of unfair competition and trademark infringement during the period of time from the termination of the KFC Franchise Agreements and Taco Bell Franchise Agreement to the date of such judgment or the date of de-imaging, pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(5)     An award of KFCC and Taco Bell's costs, attorneys' fees, expenses, pre- and post-judgment interest and any and all such other relief as it may be entitled.

(6)     An order requiring the Defendants to file with the Court and serve on Plaintiffs' counsel an accounting and report of all sales made at or from the Restaurants beginning from the date of the Defendant's failure to pay the required fees until the Defendants cease(d) operations of the Restaurants as KFC Restaurants and KFC/Taco Bell Co-Brand Restaurant;

(7)     An order enjoining Defendants from operating or doing business under any name or in any manner that might tend to give the general public the impression that the KFC

Franchise Agreements are still in force or that the Restaurants are authorized KFC and/or Taco Bell Restaurants, including;

(a)     Enjoining Defendants from operating the Restaurants as KFC and/or Taco Bell Restaurants;

(b)     Enjoining the Defendants from making, using, or availing themselves of any of KFC's and Taco Bell's Marks, Systems, methods of preparation and service of proprietary food products, designs, or other information imparted by KFCC in connection with the Restaurants and from disclosing or revealing any such information or any portion thereof to others;

(c)     Enjoining Defendants from occupying, constructing, equipping, ordering, or assisting any person or persons in the occupation, construction, or equipping of any premises incorporating the distinctive features or equipment layout which KFCC and/or Taco Bell has originated and developed and which are identifying characteristics of premises operated by KFCC and Taco Bell franchisees;

(d)     Requiring that Defendants immediately return to KFCC the KFC Confidential Manual, and return to Taco Bell the Taco Bell Manual, together with all other materials containing any of the Plaintiffs' trade secrets, confidential materials, operating instructions or business practices used in the Restaurants;

(e)     Requiring that Defendants, through de-imaging the interior and exterior of the Restaurants pursuant to KFCC's and Taco Bell's standards, including the requirements to: (1) discontinue the use and display of KFC's and Taco Bell's Marks and (2) discontinue the use

and display of any and all signs, menu board inserts, point-of-sale materials, and printed goods bearing any KFC or Taco Bell Marks or designs or any reference thereto; and

(f)    Requiring that the Defendants be required to file with the Court and serve on Plaintiff's counsel within 30 days after service of any injunction issued herein or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth in detail the manner in which the Defendants have complied with such injunction.

Respectfully Submitted,

s/ *Margaret Grant*
Margaret Grant
pgrant@stites.com
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Phone: (502) 681-0503
Counsel for Plaintiff, KFC Corporation and Taco Bell Corp.

KF000:KF129:830846:2:LOUISVILLE